UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------X

FRANCESCA CAPITELLI,

                                    Plaintiff,

        -against-

RIVERHOUSE GRILL, INC., JC COVE RESTAURANT &
BAR, JANE DUGAN, TIFFANY DUGAN, JIMMY VILLANI
and ARMANDO ESCOBEDO,

                               Defendants.

------------------------------------------------------------------------------X

**COMPLAINT**

<u>Jury Trial Demanded</u>

        Plaintiff, Francesca Capitelli, by and through her attorneys, FAMIGHETTI & WEINICK, PLLC, alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

<u>**JURISDICTION AND VENUE**</u>

1.   This is a civil action based on violations of Plaintiff's rights as guaranteed her by Title VII of the Civil Rights Act of 1964 ("Title VII"), the Fair Labor Standards Act ("FLSA"), the New York State Human Rights Law Executive Law § 296 ("NYSHRL"), and the New York State Labor Law, and any other cause of action which can be inferred from the facts set forth herein. Further, Plaintiff asserts common law causes of action of battery and intentional infliction of emotional distress.

2.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343. Supplemental

jurisdiction is invoked over State and local causes of action pursuant to 28 U.S.C. § 1367.

3.  Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

4.  On October 21, 2014, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"), which cross-filed the charge with the EEOC.

5.  On December 19, 2014, Plaintiff requested that the Division dismiss the charge for administrative convenience so that she could file the instant complaint.

6.  On April 7, 2015, the NYSDHR dismissed the charge for administrative convenience.

7.  On April 30, 2015, the EEOC mailed to Capitelli a right to sue letter.  Ex. 1.

## PARTIES

8.  Capitelli is a 26 year old female and resides in Suffolk County, New York.

9.  Riverhouse Grille, Inc. ("Riverhouse") is a restaurant and bar in Nassau County, New York which employs more than 15 employees and earns more than $500,000 in revenue per year.

2

10. JC Cove Restaurant & Bar ("JC Cove") is a restaurant and bar in Nassau County, New York, located adjacent to Riverhouse.   JC Cove employs more than 15 employees and earns more than $500,000 in revenue per year.   Upon information and belief, Riverhouse owns and operates JC Cove.   Such information and belief is based on the fact that paychecks for employees of both restaurants are issued from the same bank account in the name of "Riverhouse Grille, Inc."   Further, the operations of both restaurants are intertwined and the management team is the same.

11. Additionally, the Defendants' employees, including Plaintiff, are individually engaged in interstate commerce, as they all handle goods that have been and continue to be moved in interstate commerce

12. Jane Dugan ("Jane") is an owner of Riverhouse and is responsible for all employment decisions of Riverhouse and JC Cove, including hiring and firing, and pay.

13. Tiffany Dugan ("Tiffany") is an owner of Riverhouse and is responsible for all employment decisions of Riverhouse and JC Cove, including hiring and firing, and pay. Further, Tiffany holds herself out as an owner of JC Cove.

14. Jimmy Villani ("Villani") is the General Manager of Riverhouse and JC Cove and is responsible for all employment decisions of both locations, including hiring and firing, and pay.

3

15. Armando Escobedo ("Armando") was a manager of the Riverhouse location.   His responsibilities included opening and closing the restaurant, accounting for money, inventory, and scheduling and supervision of employees.   Accordingly, Armando supervised Capitelli at Riverhouse.

## FACTS

16. Riverhouse and JC Cove are seasonal restaurants, generally open from March to October or November, each year.

17. In March 2014, Defendants hired Capitelli as a bartender for Riverhouse.   Capitelli's responsibilities included mixing and serving beverages and alcoholic drinks.

18. Capitelli earned cash tips, but her paycheck was issued from an account in the name of Riverhouse.

19. The paycheck did not reflect the actual hours worked by Capitelli or the actual tips earned. Further, Defendants took deductions from the paychecks equal to the full amount of the check.  The rate of pay indicated on the wage statement was "$5.00."

20. During the time Capitelli worked for Riverhouse, she regularly worked more than 40

hours in a week and, on Wednesdays, Fridays, Saturdays, and Sundays, she worked more than 10 hours per day without receiving spread of hours pay.

21. For example, during the week of May 4, 2014, Capitelli worked approximately 70 hours including at least five days working more than 10 hours in a day, and during the week of May 11, 2014, Capitelli similarly worked approximately 70 hours including at least five days working more than 10 hours in a day.

22. Upon her hire (and at no other time during her employment), Defendants did not instruct Capitelli on a company anti-discrimination policy or sexual harassment policy.

23. Upon information and belief, Defendants did not instruct other employees or managers on such policies and Defendants do not maintain such policies.

24. In May 2014, Defendants hired Armando as manager of the Riverhouse location.

25. Soon after Armando started working, he would make offensive, gender based comments to females in the workplace on nearly a daily basis, including to Capitelli.

26. For instance, Armando would say to Capitelli, "You look hot," "You look sexy," and "If I were 18 again . . . (insinuating that he would try to date Capitelli if he were younger)".

27. In response, Capitelli would remind Armando that she had a boyfriend and that he should

not say such things, indicating that she did not welcome such conduct.

28. Oftentimes, Armando would make such comments in the presence of Jane, Tiffany, and/or Villani.  They would not direct Armando to stop.

29. Armando's comments to Capitelli continued throughout her employment with Defendants.   Frequently, Capitelli would complain to Jane, Tiffany, and/or Villani that she thought Armando was "sleazy" and that she did not trust him.  They took no action in response.

30. Having performed her job duties in exemplary manner at Riverhouse, in July 2014, Jane, Tiffany, and Villani hired Capitelli as manager of JC Cove for two days per week.  As manager, her job responsibilities included: opening and closing the restaurant, counting money, scheduling and booking parties, and ordering food, liquor, and other supplies. However, she did not perform work directly related to the general business operations of Defendants nor did she exercise a high level of discretion or independent judgment with respect to matters of business significance.

31. After being hired as manager for JC Cove, Capitelli continued to work four days per week at Riverhouse as a bartender.

32. While working at JC Cove and Riverhouse, Capitelli's schedule and pay was:

| Day | Location | Hours | Pay |
|---|---|---|---|
| Monday | JC Cove | 11:00a.m. to 11:00 p.m. | $200 cash |
| Tuesday | JC Cove | 11:00a.m. to 11:00 p.m. | $200 cash |
| Wednesday | Riverhouse | 11:00a.m. to 12:00a.m. | Varying tips |
| Thursday | Off | | |
| Friday | Riverhouse | 11:00a.m. to 7:00p.m.<br>* On 4 occasions worked until 4:00a.m. | Varying tips |
| Saturday | Riverhouse | 11:00a.m. to 3:00a.m. | Varying tips |
| Sunday | Riverhouse | 11:00a.m. to 1:00a.m. | Varying tips |

33. Capitelli continued to receive paychecks from only the Riverhouse account which did not reflect the actual hours worked at either location, actual tips earned, or the $200 cash. Defendants did not pay Capitelli overtime, spread of hours pay, or any pay above the 20 hours reflected on her pay check.  Her pay checks indicated she was paid a total of $100 per week (20 hours at five dollars per hour), and that she earned $400 in tips.

34. She did not receive any other paychecks from Defendants, or a paycheck from JC Cove.

35. As a sign of Defendants' trust and high regard of Capitelli, Villani and Tiffany hired Capitelli to baby-sit their young child in their home.

36. Further, in July 2014, Defendants told Capitelli that because she had done such a good job, they would re-hire her for the 2015 season.

37. On August 11, 2014, Capitelli was working as manager of JC Cove and Armando was working as manager of Riverhouse.

38. A guest asked Capitelli for information about a having a party at JC Cove.   The information could only be obtained from a computer at Riverhouse.

39. Capitelli spoke to Villani about the guest's need and Villani told her to go to the Riverhouse computer.   The Riverhouse computer was located in a locked room (the "Manager's Room") on the second floor of Riverhouse.

40. Only the working Riverhouse manager has the key to the Manager's Room and no other employee, other than the manager, is permitted in the Manager's Room.

41. The Manager's Room is approximately 8' x 10' and is located on the second floor of Riverhouse.  Thus, it is separated from the other employees and customers.

42. Capitelli walked to Riverhouse and told Armando that Villani told her to use the Riverhouse computer so she needed access to the Manager's Room.

43. Armando said, "OK, let's go upstairs" and the two went upstairs to the Manager's Room.

44. Capitelli sat at the computer and Armando closed the door behind them.  Armando sat next to Capitelli and between her and the door.

45. When working as manager, Capitelli typically wears a dress.   Indeed, on this day,

Capitelli was wearing a long dress with a tube top style top.  In other words, the top of the dress was elastic and strapless and ended just above her breasts.  The type of dress is meant to be worn without a bra, so Capitelli was not wearing a bra.

46. As Capitelli began accessing the computer, Armando said to Capitelli, "Let me see your work."[1]  Capitelli said, "No! Absolutely not!"

47. Armando continued, "Let me see them!"  Capitelli again said "No!" and put her hand up towards Armando's face, showing that his behavior was unwelcome.

48. Instead of relenting and apparently knowing that no one else would be entering the room or could see into the room, Armando forcefully grabbed the top of Capitelli's elastic dress and pulled it away from her body.

49. Because she was not wearing a bra and because of the style of dress, Armando was able to expose Capitelli's body from her breasts to her crotch.   Armando said, "good job, nice."

50. Embarrassed, scared, and horrified, Capitelli's face turned white and she sat not knowing what to do.  Armando then tried to hug Capitelli, but she ran out of the room and back to

---

[1] Before she started working for Defendants, Capitelli had breast augmentation surgery.   An acquaintance of Capitelli who knew about her surgery and who also worked for Defendants told employees about the surgery.   Accordingly, it was widely known by the employees of both restaurants that Capitelli had breast augmentation surgery.  Armando's reference to "work" was clearly a reference to Capitelli's breasts.

JC Cove, crying.

51. At JC Cove, Capitelli confided in Tony, a waiter, about what happened.  She told him that she wanted to complain to the owners.

52. Tony suggested that she wait to talk to them in person.  During her shifts, Villani, Tiffany, and/or Jane would typically come into the restaurant at some point, so, Capitelli agreed that it would be better to talk in person when one of the owners stopped in that day.

53. As the day wore on, Capitelli realized that the owners probably would not be coming in and she grew more anxious about the situation. Accordingly, Capitelli called Villani at home and complained about Armando's sexual assault.

54. Villani, sounding upset that Capitelli called him at home while he was in bed, merely told Capitelli that he would speak to Armando in the morning and he would call her back the next day.

55. Capitelli frequently called Tiffany or Villani late at night at their home for far less significant workplace issues than this.  They routinely accepted the calls and helped Capitelli with the issue.

56. Villani did not call back the next day so Capitelli called him later in the day. He said that Armando denied everything so it was "he said she said" and he could not do anything.

57. Capitelli told Villani to review the video cameras from the restaurant, but Villani alleged that they were not recording.  He further said that without proof, he could not fire Armando.

58. In an effort to bait Armando into a confession, Capitelli lightheartedly text messaged Armando, which led to him admitting, "We will forget it ever happen [sic] I am sorry . . . If ur [sic] upset."

59. Capitelli showed Armando's apology, i.e. confession, to Villani.  He did not respond nor did he terminate or otherwise discipline Armando.

60. Later, Tiffany called Capitelli and said that if she did not feel safe at Riverhouse, she could work at JC Cove exclusively.

61. She further said that Armando threatened to sue her for defamation.  Capitelli said she was very upset about the whole situation and wanted to take a few days off to rest and think about the offer.  Tiffany did not object to that accommodation.

62. Later that week, General Manager Frank Trotta, called Capitelli and asked if she was

ready to return to work.  Still worried about working with Armando right next door, she said she would consider returning the following week.   Frank said that would be acceptable.

63. Jane also called Capitelli.  She said, "when women have breast augmentation they tend to show people and think nothing of it because they aren't natural or their own. Maybe you showed him because you were proud."  Capitelli reminded Jane that she did not "show" Armando her body, but he forcibly looked.

64. On Saturday, August 16, 2014, Capitelli told Frank that she wanted to try to come back to work on Monday, August 18, 2014.  Frank said that would not be a problem.

65. On Sunday, August 17, 2014, Jane called Capitelli and left her a message indicating she was terminated.   Jane said, "It's just not going to work out," and she terminated Capitelli's employment.

66. On October 21, 2014, Capitelli filed a charge of discrimination with the NYSDHR and cross-filed with the EEOC.

67. On December 1, 2014, the NYSDHR received a "Verified Answer, Affirmative Defenses and Demands" from Defendants.   The document purported to set forth a counter-claim against Capitelli.

68. On March 31, 2015, Armando, seemingly by chance, entered Capitelli's new workplace. Armando saw Capitelli working.   Armando told Capitelli's supervisor that she was "suing" him for sexual harassment, then left.


**FIRST CLAIM**
(Hostile Work Environment – Title VII)

69. Defendants, JC Cove and Riverhouse subjected Plaintiff a hostile work environment in violation of Title VII, by directing unwelcome hostile conduct at her based on her sex/gender.  Such conduct consists of Armando pervasively making sex based comments in the workplace, as well, as his severe conduct of tearing Capitelli's dress away from her body to view her bare breasts and crotch while the two were in a manager's only area of the workplace, distant and isolated from other employees and patrons.


**SECOND CLAIM**
(Hostile Work Environment – NYSHRL)

70. All Defendants subjected Plaintiff a hostile work environment in violation of the NYSHRL.   JC Cove, Riverhouse, Villani, Tiffany, and Jane are liable as employers. Armando actually participated in the unlawful conduct so he is liable for aiding, abetting, inciting, coercing, and/or compelling the violation of the NYSHRL.


**THIRD CLAIM**
(Retaliation – Title VII)

71. Defendants, JC Cove and Riverhouse, subjected Capitelli to adverse employment actions, including termination and asserting a counter-claim, because of her complaint of

discrimination.   Such motivation can be inferred by, among other things, the temporal proximity of only six days between the complaint and the termination, Villani's anger during the phone call wherein Capitelli complained, and Defendants' failure to conduct a proper investigation and to discipline the offender.

### FOURTH CLAIM
(Retaliation – NYSHRL)

72. Defendants, JC Cove, Riverhouse, Villani, Tiffany, and Jane, subjected Capitelli to adverse employment actions, including termination and asserting a purported legal counter-claim, because of her complaint of discrimination.   Such motivation can be inferred by, among other things, the temporal proximity of only six days between the complaint and the termination, Villani's anger during the phone call wherein Capitelli complained, and Defendants failure to conduct a proper investigation and to discipline the offender.

73. JC Cove, Riverhouse, Villani, Tiffany, and Jane are liable for the retaliation as employers and for actually participating in the decision to terminate Capitelli.

74. Further, Armando told Capitelli's new employer that she filed a sexual harassment lawsuit against him.

**FIFTH CLAIM**
(Failure to Pay Overtime – FLSA)

75. Throughout her employment with Defendants, Capitelli frequently worked more than 40 hours per week and usually at least 60-80 hours per week, as detailed above.

76. Defendants, JC Cove, Riverhouse, Villani, Tiffany, and Jane, failed to pay Capitelli time and a half for every hour worked over 40 hours per week.

77. Defendants' conduct was willful.  Such willful conduct can be inferred from Defendants' fraudulent record keeping practices designed to prevent Plaintiff from receiving proper payments.

**SIXTH CLAIM**
(Failure to Pay Overtime – New York Labor Law)

78. Throughout her employment with Defendants, Capitelli frequently worked more than 40 hours per week and usually at least 60 hours per week, as detailed above.

79. Defendants, JC Cove, Riverhouse, Villani, Tiffany, and Jane, failed to pay Capitelli time and a half for every hour worked over 40 hours per week.

80. Defendants' conduct was willful.  Such willful conduct can be inferred from Defendants' fraudulent record keeping practices designed to prevent Plaintiff from receiving proper payments.

## SEVENTH CLAIM
### (Failure to Pay Spread of Hours – New York Labor Law)

81. As set forth above, Capitelli worked for Defendants for more than ten hours in a work day. Defendants willfully failed to pay Capitelli additional compensation of one hour's pay at the minimum wage for each day during which she worked in excess of ten hours.

82. Defendants' failure to pay Plaintiff spread-of-hours compensation for each day she worked in excess of ten hours is a willful violation of New York Labor Law § 650 *et seq.*, and 12 NYCRR § 146-1.6.

## EIGHTH CLAIM
### (Failure to Provide Accurate Wage Statements – New York Labor Law)

83. New York Labor Law § 195(1)(a) requires Defendants to provide Plaintiff with accurate wage statements at the commencement of her employment on an annual basis.

84. Those statements must include: the employee's rate or rates of pay, including overtime rate of pay; where applicable; how the employee is paid; and any allowances taken as part of the minimum wage.

85. NYLL § 195(3) also requires that all wage statements include, among other things, the employee's rate of pay, deductions, allowances, and overtime rate of pay.

86. Defendants failed to furnish accurate wage statements in compliance with the Wage Theft Prevention Act by, among other ways, failing to show the accurate rate of pay and overtime pay on weekly wage statements and by failing to provide initial and annual wage statements.

### NINTH CLAIM
(Battery)

87. Armando touched Capitelli without her consent thus committing the common law tort of battery.

### TENTH CLAIM
(Intentional Infliction of Emotional Distress)

88. Armando intentionally inflicted emotional distress on Capitelli by forcibly touching her against her will in a closed room isolated from customers and co-workers.

89. By forcibly pulling the top of Capitelli's dress away from her body to expose her bare breasts and body, Armando acted outside all standards of decency in the workplace and his conduct was extreme and outrageous.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

WHEREFORE, Plaintiff demands judgment against Defendants, where applicable, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, overtime pay, regular pay, loss of benefits, reinstatement, injunctive relief, liquidated damages, (where applicable), interest, and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated: Melville, New York
      May 7, 2015

                       FAMIGHETTI & WEINICK, PLLC
                       *Attorneys for Plaintiff*
                       155 Pinelawn Road, Suite 220S
                       Melville, N.Y. 11747
                       (631) 352-0050

             By:     /s/ Matthew Weinick
                     MATTHEW WEINICK
                     PETER J. FAMIGHETTI

# EXHIBIT 1

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Francesca Capitelli**
**9.5 Dolphin Lane West**
**Copiague, NY 11726**

From:  **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Holly M. Woodyard,** | |
| **16G-2015-00414** | **State & Local Program Manager** | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other *(briefly state)*    **Charging Party wishes to pursue matter in federal district court.**

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Kevin J. Berry,**
**District Director**

April 30, 2015
*(Date Mailed)*

Enclosures(s)

cc:

**RIVERHOUSE GRILLE INC.**
**195A Woodcleft Avenue**
**Freeport, NY 11520**
**Attn: Director of Human Resources**

**Matthew Weincik**
**Famighetti & Weinick, PLLC**
**155 Pinelawn Road, Suite 2208**
**Melville, NY 11747**